PHILLIPS ET AL., ETC. v. COMPTROLLER OF THE
TREASURY, RETAIL SALES TAX DIVISION

[No. 139, September Term, 1960.]

*Decided February 20, 1961.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*John G. Wharton,* with whom were *Nicholas G. Penniman, III,* and *Barton, Wilmer, Bramble & Penniman* on the brief, for the appellants.

*William J. McCarthy, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General,* and *Ed-*

ward P. Engelbert, Chief, Sales Tax Division, Office of Comptroller of the Treasury, on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

The Baltimore City Court affirmed a decision of the Comptroller denying the appellant's claim for a refund of certain retail sales taxes, and the claimant has appealed.

The case is submitted on an agreed statement of facts, which is as follows:

"Appellant is engaged in the business of selling International Harvester equipment in the Maryland and Virginia area. The sales involved in this case were made on various dates from December 21, 1956, through May 29, 1958, and were all to the same purchaser, Weldon D. Shannon, trading as Shannon Construction, hereinafter called 'Shannon' or 'purchaser'. Shannon, an excavator, was employed as a sub-contractor on numerous building projects, primarily in the Baltimore area, and requiring expensive heavy-duty earth-moving equipment, he purchased the same from Appellant. All sales were secured by conditional contracts of sale or chattel mortgages which were properly executed and recorded.

"Shannon failed to meet the installment payments as due, and after the accounts became critically delinquent, Appellant, with the assistance of Shannon's employees, repossessed the equipment. At the time of the return of the machines, Shannon owed over One Hundred Fifty Thousand Dollars ($150,000.00) to Appellant, and after crediting Shannon with the values of the machines at the time they were returned and all moneys paid by Shannon on said accounts, there remained, and still remains, an uncollectible indebtedness of about Eighty Thousand Dollars ($80,000.00).

"The Chief of the Retail Sales Tax Division testified that Rules 1 through 72 were promulgated

simultaneously prior to July 1, 1947, the effective date of the Maryland Retail Sales Tax Act, and that Rule 10 was applied in this case in the same manner as it had been applied or administered by the Comptroller since the date of inception of said rule. Although Appellant was to receive periodic payments from Shannon, it remitted to Comptroller at the time of the sale of each machine the full amount of retail sales tax due in connection with the transaction. It is from the judgment of the lower Court holding that Appellant is not entitled to a refund of sales taxes in the amount of One Thousand Four Hundred Forty-three Dollars ($1,443.00), which it maintains is attributable to the remaining bad debt owing and due by Shannon that this appeal is taken. The parties hereto agree that the issues involved in this appeal were properly presented to the lower Court."

There is no question raised concerning the full, fair and proper credit for the value of the machines, after their recapture, having been given to Shannon's account, and it seems to be conceded that the appellant charged off, during its taxable year, the remaining uncollectible indebtedness.

Code (1957), Article 81, Sections 324-371, both inclusive, sets forth the Maryland Retail Sales Act (Act). Considerable space is consumed in the briefs in quoting definitions used in the Act in an attempt to show on the one side that the sales tax is imposed, where there is a credit or installment sale, only on that part of the sales price actually *received* by the seller, and on the other side to show that the tax is imposed upon the vendee, and is calculated upon the whole selling price, irrespective of how much thereof is collected by the seller. For the purposes of a disposition of this case, and in order to save time and space, we shall assume, without deciding, that the sales tax is a tax on all retail sales of tangible personal property, as defined in the act (and on certain services, not here pertinent) ; and is one that is imposed upon the vendee, to be calculated upon the whole amount of the sales price, whether paid in cash, in installments or by

credit, unless the sale is exempted entirely by the Act, or the Act (or some regulation of the Comptroller duly authorized by the Act) authorizes a revision of the tax, or a refund of some portion thereof, as originally calculated on the whole sales price.

The Sales Tax Act was initially enacted by the legislature in 1947, to become effective as of July 1st, of that year. Section 365 (a) (all sections referred to will be given their present numbers) authorized the Comptroller to make rules and regulations to "carry out the provisions of this subtitle and to define any terms used herein." Section 329, set forth later in full, gave specific authority to make regulations relative to credit or installment sales, and Section 347, also set forth in full later, made specific provision for certain refunds. Anticipating the effective date of the Act, July 1st, 1947, the Comptroller prepared Rules 1 through 72 to be promulgated simultaneously with the effective date of the Act. We mention this now, as it helps to explain, as we shall soon see, the reasons for some of the rules that have a direct bearing upon the outcome of this case.

Section 327 provides that upon each taxable sale, the tax to be collected shall be stated and charged separately from the sale price and shown separately "on any record thereof *at the time when the sale is made or at the time when evidence of the sale is issued or employed by the vendor.*" (Emphasis added.) It further provides that the tax shall be paid by the purchaser to the vendor, as trustee for and on account of the State.

Section 329 reads as follows:

"The tax hereby imposed shall apply and be collected by the vendor from the purchaser at the time the sale is made regardless of the time when the purchase price is paid and delivered; unless the Comptroller shall provide by regulation in the case of credit or installment sales for the payment of the tax upon collection of the price or installments of the price or at some other time."

In pursuance of the authority granted to him under the

provisions of Section 329, the Comptroller promulgated Rule 57, which authorized the vendor in installment or deferred payment sales to adopt either of two methods:

(a) To pay the tax on its ordinary due date in full; or

(b) To remit to the State each month the percentage of the taxes "collected as a result of an arrangement under which the purchaser would pay a vendor with each periodic payment that portion of the total tax which the payment bears to the total amount to be paid."

A careful analysis and consideration of this Rule made it apparent that a vendor who elected to pay the tax on the installment basis, would receive an advantage over the taxpayer who paid the full tax at the time of the sale. The installment taxpayer would pay only as he collected cash, so, if he failed to collect, he would have no obligation to pay the tax to the Comptroller; whereas, the accrual taxpayer would have advanced the entire amount of tax at the time of the sale, and, upon failure to collect installment payments, would not only lose the value of his merchandise, but also a proportionate amount of the sales tax. In an effort to equalize more nearly the positions of the taxpayer who paid in full on the ordinary due date and the one who paid in installments, Rule 1 was adopted, which states:

"Where the Vendor is unable to collect accounts receivable in connection with which he has already remitted the tax to the Comptroller, he may apply for a refund * * *. This rule shall apply only to such accounts as are found worthless and charged off during the taxpayer's taxable year."

At this point, it may not be inappropriate to note that the appellee earnestly contends that a reading of Sections 327 and 329 leads to the inescapable conclusion that the tax is imposed at the time the sale takes place, without regard to whether the goods are actually delivered at that time, or whether the purchase price is paid. We assumed this much above. However, the appellee goes further and claims that

Section 329 does not affect the imposition or payment of the tax, but merely authorizes the Comptroller to defer the time of payment on installment or credit sales. In other words, appellee urges that once the tax is calculated as of the time of a credit or installment sale and the tax is paid in full by the vendor, Section 329 does not authorize the Comptroller, by proper regulation, to refund to the vendor any portion of the tax (on the credit or installment portion of the sale price) that he is unable to collect from the vendee.

With this, we are unable to agree. Our reasons should be obvious. If Section 329 authorizes the Comptroller to provide by regulation for the payment of the tax at the time of the "collection of * * * installments" by the vendor, and Rule 57 permits "an arrangement under which the purchaser would pay a vendor" the tax at the time he (the purchaser) paid his installments, and certain of the installments are never paid, how can it seriously be argued that the vendor would be liable for taxes on the installments he never collected? Furthermore, if the contention were sound, the Comptroller had no authority to promulgate Rule 1, which we think, and we so hold, to be a valid regulation adopted under the authority of Section 329.

We now approach the crux of the case. Section 347 provides that when a sale upon which a tax has been paid is rescinded, cancelled or the property sold is returned to the vendor, and the price repaid or credited, in whole or in part, the vendor shall return to the purchaser the proportionate amount of tax so paid to him, and Section 348 makes provision for the vendor who has repaid such a tax to the purchaser to make application for a refund from the Comptroller. In order to explain, and facilitate the application of, Sections 347 and 348, the Comptroller adopted Rule 10. It will be unnecessary to set out the Rule in full: after making specific provisions for the carrying out of said sections, the Rule concludes by stating: "When any merchandise is repossessed, no tax shall be refunded." And herein lies the real controversy in the case. Both the Comptroller and the trial court concluded that this provision prohibited a recovery by the claimant in this case.

The appellants do not attack the validity of Rule 10, but they very earnestly, and we think persuasively, argue that it does not prohibit a recovery in this case. We see no reason why Rule 1 and Rule 10 cannot, or should not, be considered and construed together. Rule 10, as its heading indicates, was primarily promulgated for the regulation of administrative procedure under Sections 347 and 348, which deal with cancelled and returned sales. The Comptroller concedes that Rule 1 was adopted to avoid some of the possible inequities that could have arisen under Rule 57, had Rule 1 not been promulgated, namely, that a vendor, who elected not to pay the credit or installment portions of the tax until actually received, would have a decided advantage over one who elected to pay the whole tax under provision (a) of Rule 57. We think the proper and reasonable meaning to be given the quoted portion of Rule 10, when construed with Rule 1, is that when any merchandise is repossessed, no tax shall be refunded, unless the vendor is able to show a full and complete compliance with Rule 1, in which event, the vendor will be entitled to a refund in accordance with the provisions of said Rule 1.

Appellee concedes that had the appellant sat idly by and let the machines "go to pot," and then complied with Rule 1, the appellant would have been entitled, under Rule 1, to a refund of the taxes paid on some $150,000, but as the appellant repossessed the machines, Rule 10 prevents the recovery of any refund whatever. If this were true, it would present a very anomalous and incongruous situation: a vendor, who has sold very valuable machines on the installment plan, is entitled, after his purchaser has defaulted, to a refund of taxes on the whole unpaid purchase price if he pays no further attention to the machines, but, if he salvages what he can (in this instance, come $70,000) by recapturing the machines (and in consequence thereof saves the State the amount of taxes calculated on their then value) he is entitled to no refund, because of the provisions of Rule 10. Such a result would not only be most unfortunate and unreasonable, but it would be unsound and untenable.

The appellee cites to us two Michigan cases, *Montgomery*

*Ward & Co. v. Fry,* 269 N. W. 166 and *Rudolph Wurlitzer Co. v. State Board, etc.,* 275 N. W. 248, and one from Washington, *Olympic Motors, Inc. v. McCroskey,* 132 P. 2d 355, as sustaining his position. We have examined these cases and several others. We shall not consider them at any great length, as we think they are easily distinguishable. For instance, the Michigan statute, Michigan Stat. Ann., Sec. 7.521 (h), that imposes its sales tax differs from ours in several important aspects. Among these differences, the statute imposes a tax, and provides, "* * * nor shall any deduction be allowed for losses," and in the *Fry* case, the manager of the vendor testified that the vendor had collected, at the time of sale, the full amount of the tax from the vendee. The Washington statute has a similar provision to that of Michigan's in that it defines selling price, "* * * without any deduction on account of losses." Revised Code of Washington, Section 82.08.010. And the opinion in the *McCroskey* case points out that although the statute authorized the tax commission, by regulation, to provide for the collection of taxes on installments (presumably at the time of the payment of the installments), no such regulation (as our Comptroller's Rule 57) had ever been promulgated.

We conclude, therefore, that the appellant is entitled to a refund in the amount of $1,443.

*Order reversed, and case remanded for the entry of an order in conformity with this opinion; the appellee to pay the costs.*