MAY *v.* WARNICK, Etc. et al.

[No. 67, September Term, 1961.]

*Decided November 20, 1961.*

The cause was argued before BRUNE, C. J., and PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*William H. Geppert* and *Lee C. Barnett,* with whom were *Gunter & Geppert* on the brief, for the appellant.

*Gorman E. Getty, Leslie J. Clark* and *William L. Wilson,* with whom were *Edward J. Ryan, Thomas B. Finan* and *J. Howard Holzer* on the brief, for the appellees.

PRESCOTT, J., delivered the opinion of the Court.

As a result of a collision on May 6, 1959, between a pick-up truck and a Ford automobile, two suits were instituted in the Circuit Court for Allegany County. One was by the appellant May, the owner and operator of the Ford, against the appellee Warnick, the operator of the truck, and his employer (the owner of the truck), Feldstein Iron & Metal Company, for personal injuries to May and property damage to his car; the other was by the appellee, Warnick, for his own use and to the use of the State Accident Fund, for personal injuries and loss of wages. The cases were consolidated and tried before a court and jury, resulting in a verdict and a judgment for costs against May in the first case, and a verdict and judgment in the amount of $10,000 in favor of the plaintiff against May in the second one. May appeals from both judgments.

Only two questions are presented: First, did the trial court err in its instructions to the jury? Second, did said Court err in failing to direct a verdict in favor of May in the case brought against him by Warnick?

The accident occurred on a clear morning on Bedford Street in the City of Cumberland. Bedford Street in the vicinity of the accident is a straight, macadam surfaced, almost level, one-way, two-lane, through roadway, 20 feet in width, with all traffic moving in a southerly direction. It constitutes a segment of U. S. Route 220 bringing traffic into the City from the north. Frederick Street, one block to the east, parallels Bedford Street, and provides one-way traffic for vehicles moving north on said Route 220. Valentine Street is a two-way street running east and west and intersects both streets at right angles, but does not cross either.

May and Warnick gave conflicting accounts of how the accident happened. Warnick testified that he intended to make a left turn into Valentine Street from Bedford Street. He looked into his rear view mirror and saw no traffic on the highway. When about 150 or 200 feet from the intersection, he drove his vehicle from the right lane of traffic into the left lane, gave a hand signal and, while turning into Valentine Street, was struck on the left side by the right front end of the May vehicle. May stated that he was following Warnick's truck in the right-hand lane of traffic, and, when about three blocks from Valentine Street, pulled into the left lane and started to pass the truck. Warnick speeded up a little and May dropped back with both vehicles moving in their respective lanes of traffic. When they reached the intersection of Valentine Street the Warnick truck attempted to make a left turn from the right-hand lane of traffic and the right front end of the May car collided with the left door of the pick-up truck, causing the damages and injuries complained of in both suits. May's version of the accident was corroborated, at least in part, by the testimony of a disinterested motorist, who was following both vehicles south on Bedford Street, and by a City Police Officer, who investigated the accident and took photographs of the accident, which were produced at the trial.

The trial judge denied May's motion for a directed verdict in the case where he was the defendant; and, over his objection, instructed the jury that in determining negligence or contributory negligence by the operators of the vehicles, "there are certain statutes or 'rules of the road,' which motorists must abide by \* \* \*," and included in his instructions Code (1957), Article 66½, Section 221, Subsections (a), (b) and (b) (2), the latter of which states that a vehicle shall not be "driven to the left side of the roadway" when approaching within 100 feet of, or traversing, any intersection, informing the jury that said subsections were applicable to the case and could be considered by them in determining whether May was negligent.

Our principal inquiry is whether the said provisions of Section 221 which were included in the court's charge apply to highways designated for one-way traffic.[1] The rules that

---

1. § 221. LIMITATIONS ON OVERTAKING ON THE LEFT.

(a) *Clear visibility required.*—No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken.

(b) *Grades or curves; bridges, etc.; signs and lines.*—No vehicle shall, in overtaking and passing another vehicle or at any other time, be driven to the left side of the roadway under the following conditions:

(1) When approaching the crest of a grade or upon a curve in the highway where the driver's view along the highway is obstructed.

(2) When approaching within 100 feet of any bridge, viaduct, or tunnel or when approaching within 100 feet of or traversing any intersection or railroad grade crossing;

(3) Where official signs are in place directing that traffic keep to the right, or a distinctive center line is marked, which distinctive line also so directs traffic as declared in the sign manual adopted by the State Roads Commission."

Subsections (b) (1) and (b) (3) (nor (b) (2) insofar as it relates to railroad crossings) are not involved in the instant case. What-

govern the overtaking and passing of vehicles proceeding in the same direction are, for the main part, contained in Sections 217, 219, 220, 221, and 223. Section 217, in part, requires that upon all highways of sufficient width, a vehicle shall be driven upon the right half thereof, except when overtaking and passing another vehicle proceeding in the same direction, and when proceeding upon a roadway divided into three marked lanes or a one-way thoroughfare. Section 219 provides, among other things, that, subject to limitations and exceptions, drivers of motor vehicles overtaking another vehicle proceeding in the same direction shall pass to the left thereof. Section 220 states that a driver may overtake and pass upon the right of another vehicle which is making, or about to make, a left turn; that, within business and residential districts, a driver may overtake and, allowing sufficient clearance, pass another vehicle moving in the same direction, either on the right or left, on a highway with unobstructed pavement of sufficient width for four or more lines of moving traffic, when such movement may be made with safety; and that overtaking and passing to the right is permitted on one-way streets, where the roadway is free of obstructions and of sufficient width to accommodate at least two lines of moving traffic.[2] Section 221 is set forth in footnote (1). Section 223 provides, *inter alia,* that upon highways clearly marked into three or more lanes, vehicles shall be driven as nearly as practical within a single lane; and upon highways divided into three lanes, vehicles shall not be driven in the center lane except when overtaking and passing another vehicle, when preparing for a left turn, or when the center lane is at the time

---

ever is said concerning them later is to illustrate the applicability, vel non, of the subsections included in the charge.

All future references to statutes will be to Code (1957), Article 66½, unless otherwise noted.

2. This latter provision was not included in Section 220 until the enactment of Ch. 119 of the Acts of 1957. It may have been inspired by the decision in Vogelsang v. Sehlhorst, 194 Md. 413, 71 A. 2d 295, wherein the Court held that Section 217 (then 162), when considered with several other sections relating to overtaking and passing, *impliedly* permitted passing on the right on one-way streets.

allocated exclusively to traffic moving in the same direction as the vehicle is proceeding.

It is well-established law that in construing legislative enactments, all statutes relating to the same subject matter are to be considered and harmonized as far as possible. And this rule applies when the statutes were passed at different dates, separated by long or short intervals. The statutes are to be compared and brought into full accord if possible, but if they are insusceptible of a construction which will permit all their provisions to fall into complete agreement, they are to be made to operate together as far as possible, consistent with the evident intent of the latest enactment. *Balto. Credit Union v. Thorne,* 214 Md. 200, 134 A. 2d 84. Cf. *Reed v. President & Com'rs of the Town of North East,* 226 Md. 229, 172 A. 2d 536; *Height v. State,* 225 Md. 251, 170 A. 2d 212; *Phillips v. Comptroller,* 224 Md. 350, 167 A. 2d 913.

An examination of our statutes, as we have outlined them above, discloses that the provisions of Section 221 are not explicitly made either applicable or inapplicable to one-way roadways; and we have not heretofore been called upon to determine the question, but our research has uncovered decisions of our sister states that are so closely in point that they, together with the unanimity of thought upon the subject, free the question from serious difficulty. We shall discuss these cases later.

There can be little doubt that one of the primary reasons for prohibiting an overtaking vehicle from going to the left side of the road in passing another at, or within a specified distance from, an intersection is that the front car may be anticipating a left turn. 3 Berry, *Automobiles* (7th Ed.), § 3.42; *Cierley v. Uhalt,* 10 P. 2d 769 (1932) (Cal.); 3 Blashfield, *Cyc., Automobile Law & Practice,* § 965. If the present provisions of the law are complied with, there is little danger from this source: the motorist contemplating a left turn is required to approach the intersection (where two-way traffic is being accommodated on both streets) in that portion of the right half of the roadway nearest the center line thereof (giving an appropriate signal, in accordance with Sections 228, 229 and 230), but he is prohibited from passing to the left

of the center until the intersection is reached, Section 225 (b); and the following motorist is forbidden to pass the lead vehicle on the left of the roadway, Section 221 (b) (2).

This prohibition in Section 221 against overtaking and passing "to the left side of the roadway * * * when approaching within 100 feet of or traversing any intersection," when applied to two-way highways, eliminates much of the danger of a collision that would be involved if the overtaking vehicle were permitted to pass on the left, or wrong, side of the road at or near the intersection. However, the danger of a collision between a leading vehicle, whose operator anticipates a left turn, and a following vehicle is not enhanced by permitting the overtaking driver to pass the lead vehicle on the left side of the road at or near an intersection, if the highway be such that traffic is only permitted to proceed in one direction. In that case, the motorist intending to turn left must "approach the intersection in the extreme left-hand lane lawfully available to traffic moving in the direction of travel" of his vehicle, Section 225 (e), and give a proper signal of his intention to turn left. Hence it is obvious that if the driver making the left turn complies with the law, the passing vehicle, even though it may be to the left of the center of the one-way roadway, must pass to his right; and passing to the right on one-way thoroughfares is explicitly authorized by Section 220 (c). The above is significant, we think, in showing that the underlying reason for prohibiting a motorist from going to the left of the center of the road, when passing a vehicle at or near an intersection, is not present, when the motorist and the vehicle being passed are proceeding on a one-way highway.

A careful reading and analysis of the specific terms of Section 221, (a), (b), and (b) (2), impel a conclusion that they were designed to apply to two-way traffic, and not to direct the conduct of motorists proceeding on one-way roadways. Subsection (a), in prohibiting a vehicle being driven to the left of the center of the roadway in passing another vehicle, "unless such left side * * * is free of *oncoming* traffic," and such overtaking and passing may be completed "without interfering with the safe operation of *any vehicle approaching from the opposite direction*" (italics ours) makes it cer-

tain that these provisions pertain to two-way traffic. Without repeating the provisions of subsection (b), and (b) (2), it seems apparent that they, too, were designed for two-way traffic, and their purpose was, in addition to what we have said above concerning overtaking and passing at intersections, to eliminate, as far as possible, the danger of a collision between a car on the left side of the road and one approaching from the opposite direction which had not necessarily been seen, or whose operator has not been in a position to observe the vehicle on the left side of the highway for a sufficient period of time to avoid colliding with it. There is no sound reason for prohibiting vehicles from being on the left side of the road when approaching the crest of a grade, a curve (subsection [b] [1]), or viaduct, etc., if all the traffic on said road is moving in one direction. One of the objectives of having one-way highways is to facilitate the flow of traffic; if the provisions of subsection (b) and (b) (2) were held to be applicable to one-way roadways, it would serve no useful purpose, but, on the contrary, it would seriously impede the flow of traffic upon these highways. Such a result should be avoided in the absence of specific language requiring a ruling to the contrary.

We turn now to a consideration of the cases wherein statutes relating to overtaking and passing at intersections, similar to Section 221 (b) and (b) (2), were involved. In an Annotation in 53 A.L.R. 2d 866, it is said that it is generally agreed that a traffic regulation forbidding one vehicle from passing another at an intersection has no application to a case in which the two vehicles in question were on a highway which was divided or marked so that traffic in their direction could legally flow in two or more lines or files. A reading of the cases fully supports this statement.

In the recent case of *Wallace v. Taxicabs of Tampa, Inc.,* 112 So. 2d 574 (Fla. 1959), the Court considered a traffic regulation relative to passing at intersections. There the plaintiff was driving east on Lafayette Street, a through street which had two lanes of moving traffic in each direction. He was proceeding in the left lane and was approaching a stop light, which had traffic in the right lane backed up past an

intersecting stop street. The cars that had stopped in that lane, had a gap through which the traffic on the intersecting street could proceed on to Lafayette. The defendant's cab emerged from this gap just as plaintiff was proceeding past it and struck the plaintiff's car on the right side. The trial court admitted into evidence, over objection by the plaintiff, an ordinance which provided: "(c) The operator of a vehicle shall not overtake and pass another vehicle proceeding in the same direction * * * at any intersection of highways * * *." The plaintiff argued that although the ordinance had no limitations in its terms, it was not applicable upon streets laned for multi-file traffic. The court carefully reviewed the decisional law on the subject, and held that after studying the cases, it had reached the conclusion that, while a reading of subsection (c) by itself would lead to a belief that it applied without exception, said subsection must be read and interpreted together with the other parts of the ordinance, and when the ordinance was viewed as a whole, subsection (c) did not apply to multi-laned streets, which ruling required a reversal and remand for a new trial.

The Supreme Court of Colorado was, likewise, required to reverse in *Wilson v. Stroh,* 216 P. 2d 999 (Colo.). In that case the statute involved, except for distances named and a few minor differences, was almost identical with ours. Two trucks were being driven in a southerly direction on a four-lane highway, divided by an island in the center. The defendant was in the lead in the right-hand lane. Plaintiff's vehicle approached from the rear. The defendant intended to make a U-turn at an intersection just ahead and started to make this turn, without giving any warning to plaintiff's driver. Plaintiff admitted that his driver was attempting to pass within 200 feet of an intersection (the proscribed distance in the Colorado statute) and that he was on the left-hand side of the western portion of the divided highway, in the passing lane. The trial court held that the plaintiff's driver had violated the statute in attempting to pass at an intersection and this violation was a proximate cause of the plaintiff's damage; consequently, he could not recover. In reversing, the court stated: "We believe the trial court mis-

apprehended the application of the pertinent part of the above statute to the undisputed facts in the case, as well as the physical condition of the highway * * *. It is to be noted that the introductory title of the statute is, 'Limitations on overtaking on the left.' In other words, it is made clear by the statute that no vehicle shall at any time be driven on the left side of the roadway when the prohibited conditions exist. The statute also is clearly intended to apply to a two-way or two-lane highway for the avoidance of the traffic coming from the opposite direction. It does not make sensible application to two lanes for traffic all going in the same direction as in the case before us. Plaintiff was not driving on the left side of the roadway as mentioned in statute. He was driving in the proper lane for passing in one direction traffic. The statute quoted provides that 'in passing,' a vehicle shall not be driven to the left side of the roadway, clearly indicating statutory regulations of traffic on a two-lane highway. Plaintiff at all times was on the right side of the roadway, and not in a position to meet traffic from the opposite direction, because such traffic was on the other side of the divided highway."

In *McCotter Transport Co. v. Hall,* 148 A. 2d 110 (Del. 1959), the facts were quite similar to the case just considered, and the statute involved, 21 Del. C. § 4133 (e), provided: "The driver of a vehicle shall not overtake and pass any other vehicle proceeding in the same direction * * * at any intersection of highways unless permitted so to do by a traffic or police officer." [3] Plaintiff's driver was proceeding north on a dual highway with two lanes of traffic in each direction. Defendant's vehicle was headed in the same direction in the right-hand lane of traffic. Just as plaintiff's vehicle was about to pass defendant's at an intersection, defendant, suddenly and without warning, turned to the left and an accident ensued. The trial court granted defendant's motion for a directed verdict on the ground that plaintiff's driver had violated § 4133 (e), above, in attempting to overtake and pass

---

3. Several States have statutes that expressly exempt one-way roadways and/or roadways having two or more lanes proceeding in the same direction from provisions of their statutes similar to Section 221. (Texas) Vernon's Ann. Civ. Stats., Art. 6701 d Sec. 57 (a) 2, (b). (Pa.) 75 P.S. § 1008.

at an intersection. The Supreme Court of Delaware reversed, holding that § 4133 (e) did not apply to dual or through highways. See also *Magill v. George,* 105 N. E. 2d 808 (Ill. App. 1952); *Egan v. Palmer,* 293 S. W. 460 (Mo.). Compare *Infantino v. Maher,* 79 A. 2d 247 (Pa.); *Haueter v. Budlow,* 42 N. W. 2d 261 (Wisc.); *Minugh v. Royal Crown Bottling Co.,* 267 S. W. 2d 861 (Tex. Civ. App.); *Hopper, McGaw & Co. v. Kelly,* 145 Md. 161, 125 A. 779.

Thus it is seen that the learned trial judge fell into error when he instructed the jury that Subsections (a), (b) and (b) (2) of Section 221 were applicable to the facts of this case; and it is obvious that such an instruction was prejudicial to the appellant, as it was tantamount, after the admission by May that he was attempting to pass the truck at the intersection, to an instruction that May was guilty of negligence.

The other contention of the appellant is easily answered. Although Warnick's version of how the accident occurred was contradicted, his testimony, as we have stated it above, was sufficient to take the case to the jury. After a jury trial, we do not consider and determine the weight to be given the evidence, but pass only upon its sufficiency to take the case to the jury.

> *Judgments reversed, and cases remanded for a new trial. The costs in the trial court to abide the result; the costs in this Court to be paid ¼ by the appellee, Feldstein Iron & Metal Co., and ¾ by appellee, Warnick.*