WILSON ᴇᴛ ᴀʟ. *v.* BOARD OF EDUCATION OF
MONTGOMERY COUNTY ᴇᴛ ᴀʟ.

[No. 294, September Term, 1963.]

(Two Appeals In One Record.)

*Decided May 5, 1964.*

The cause was argued on April 2, 1964, before BRUNE, C. J., and HAMMOND, HORNEY, MARBURY and SYBERT, JJ.; and re-argued, on April 6, 1964, before the entire Court.

*Mathias J. DeVito, Assistant Attorney General* (on both arguments), with whom was *Thomas B. Finan, Attorney General,* on the brief, for the State Board of Education, one of the appellants.

*David L. Cahoon* (on both arguments) for the other appellants.

*James C. Christopher* (on the first argument) and *Charles W. Prettyman* (on both arguments) for the appellees.

Brief *amicus curiae* filed by *F. Duncan Cornell* and *Walter S. Levin* for Maryland State Teachers' Association, Inc.

HENDERSON, J., delivered the opinion of the Court.

The State Board of Education, certain individual teachers,

and a taxpayer, appeal from an order of the Circuit Court dismissing a suit to restrain the Montgomery County Board of Education (the County Board) from delivering the fingerprint records of its employees to the local police. On May 27, 1963, the County Board by a 4 to 3 vote passed a resolution requiring that all fingerprint cards of all current employees of the County School system be sent to the local police for review, and all cards of future applicants be processed in the same manner. Prior to that date all teachers and other persons employed were fingerprinted and the cards sent to the Federal Bureau of Investigation in Washington for processing and report. The cards and information received were placed in each individual employee's personal record, but thereafter kept private and confidential. Certain individual teachers and a taxpayer brought suit for an injunction, contesting the authority of the County Board to adopt or implement such a resolution. In the meantime, the matter was brought to the attention of the State Board. On July 3, 1963, after a public hearing the State Board passed an order setting aside the resolution and prohibiting any County Board in the State from adopting such a procedure. On a rehearing requested by the County Board the State Board affirmed the order but undertook to clarify its meaning or intent. The individual appellants amended their complaint, seeking relief in reliance upon the State Board's order, and the State Board intervened as a party plaintiff. From an adverse ruling by the Chancellor the appeal comes here.

The Maryland Constitution, Art. VIII, sec. 1, directs the General Assembly to "establish throughout the State a thorough and efficient System of Free Public Schools." In Code (1957), Art. 77, sec. 2, it is provided that "educational matters affecting the State and the general care and supervision of public education shall be entrusted to a State Department of Education, at the head of which shall be a State Board of Education." Important powers are delegated to this Board by secs. 21 and 22:

> "21. The State Board of Education shall, to the best of their ability, cause the provisions of this article to be carried into effect. They shall determine the educa-

tional policies of the State; they shall enact bylaws for the administration of the public school system, which when enacted and published shall have the force of law. For the purpose of enforcing the provisions of this article, and the enacted and published bylaws of the Board, the State Board of Education shall, if necessary, institute legal proceedings. The State Board of Education shall explain the true intent and meaning of the law, and they shall decide, without expense to the parties concerned, all controversies and disputes that arise under it, and their decision shall be final; * * *."

"22. The State Board of Education shall exercise, through the State Superintendent of Schools and his professional assistants, general control and supervision over the public schools and educational interest of the State; they shall consult with and advise, through their executive officer and his professional assistants, county boards of education * * * and shall seek in every way to direct and develop public sentiment in support of public education."

The authority granted to the county boards of education is set out in secs. 3 and 54. Sec. 3 provides:

"3. Educational matters affecting a county shall be under the control of a county board of education."

Sec. 54 provides:

"54. The county board of education shall to the best of its ability cause the provisions of this article, the bylaws, and the policies of the State Board of Education to be carried into effect. Subject to this article, and to the bylaws, and the policies of the State Board of Education, the county board of education shall determine, with and on the advice of the county superintendent, the educational policies of the county and shall prescribe rules and regulations for the conduct and management of the schools."

The totality of these provisions, quite plainly we think, invests the State Board with the last word on any matter concerning educational policy or the administration of the system of public education. This has been described as "a visitatorial power of the most comprehensive character." *Wiley v. School Comm'rs.*, 51 Md. 401, 406. See also *Shober v. Cochrane*, 53 Md. 544; *Underwood v. School Board*, 103 Md. 181; *Zantzinger v. Manning*, 123 Md. 169; *School Commissioners v. Morris*, 123 Md. 398; *School Com. of Car. Co. v. Breeding*, 126 Md. 83; *Metcalf v. Cook*, 168 Md. 475. There are, of course, some limitations upon the State Board's power. It cannot finally decide pure questions of law. Cf. *School Com'nrs. v. Henkel*, 117 Md. 97, and *Board of Education v. Cearfoss*, 165 Md. 178. Nor can it exercise its visitatorial power fraudulently, in bad faith, or in breach of trust. *Coddington v. Helbig*, 195 Md. 330.

For present purposes it is immaterial, we think, whether the power exercised in the instant case is viewed as an exercise of the rulemaking power, as the resolution of a dispute, or as a matter of general control and supervision. In any aspect the problem of screening employees is one of administrative policy, and the mere fact that the solution is initially within the scope of the County Board's authority does not negative the power of the State Board to review it and set it aside, as the cases cited demonstrate. The appellees seek to distinguish the cases cited on the ground that the statutes have been amended. Whatever amendments have been made in sec. 54, it is clear that the powers of the County Board are expressly subordinated to those of the State Board. The appellees point to secs. 99 and 159, authorizing the County Boards to adopt higher standards for teachers and to pay more than the minimum salaries prescribed. If we assume, without deciding, that these sections confer exclusive authority upon the County Boards to act in these particulars, it does not follow that the County Boards are freed from supervision in other particulars. On the contrary, we think it is clear that the matter of limiting the use of personnel records is peculiarly one for the State Board to decide as a matter of statewide policy and practice, and that it falls within the provisions of section 54, as limited by secs. 21 and 22.

Whether the action of the State Board was wise or unwise, it was not unrelated, we think, to the problem of teacher procurement. The indiscriminate referral of fingerprint records to the local police is an invasion of privacy to which many teachers, the Montgomery County Education Association, and the State Teachers Association, object, whether or not they have any legal ground of complaint. Cf. *Carr v. Watkins*, 227 Md. 578, 586, and cases cited. The rule adopted by the County Board might add to the present difficulties of obtaining qualified teachers. Nor was the State Board's order so broad as to tie the hands of the County Board in passing upon the qualifications of teachers. As explained in its final order the State Board declared that "it was not the intent of the Board to prevent any county board from transmitting information received from the Federal Bureau of Investigation to local or State law enforcement agencies but to prohibit the transfer of 'personnel records containing fingerprint cards or other information'. The procedure for personnel checks in Montgomery County in force prior to May 27, 1963, is not intended to be disturbed in any way." The State Board found as a fact that there was no demonstrated need to open the county files on a wholesale basis. Whether wise or unwise, we think the order of the State Board did not exceed its statutory authority.

> *Order reversed, with costs, and case remanded for the passage of an injunction as prayed in the amended bill of complaint.*