## FARBER'S, INC. *v.* COMPTROLLER OF THE TREASURY OF THE STATE OF MARYLAND

[No. 375, September Term, 1971.]

*Decided June 12, 1972.*

The cause was argued before BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ., and ROBERT E. CLAPP, JR., Associate Judge of the Sixth Judicial Circuit, specially assigned.

*Michael J. Abromaitis* for appellant.

*William J. Rubin, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

This is a dispute over whether appellant, Farber's,

Inc. (Farber's), is entitled to a refund of $21.17 of retail sales tax paid. It obviously has implications beyond that amount or it would not be here.

The question presented may be summarized: Should a vendor on credit (installment sale or otherwise) who remits to the Comptroller monthly the entire retail sales tax on each sale be placed in a more favorable position when a portion of the account proves uncollectible than such a vendor who remits monthly the percentage of taxes "collected as the result of an arrangement under which the purchaser would pay a Vendor with each periodic payment that portion of the total tax which the payment bears to the total amount to be paid"? The Comptroller and the Maryland Tax Court felt they should be treated alike. We agree.

The facts are not in dispute and were stipulated. Farber's conducts a retail business in home furnishings in Baltimore. A substantial number of its merchandise sales are under Code (1969 Repl. Vol.) Art. 83, §§ 153A-153H, the Retail Credit Accounts Law. From the effective date of that law on June 1, 1967, to the present it "has recorded all retail credit account transactions on its own books as well as in statements of account to customers, in accordance with [that law], as two separate amounts: (1) principal amount (amount of sales price plus sales tax) and (2) 'service charge,'" a term defined in § 153A (e). Since this service charge is in the nature of a finance charge or interest, under Code (1957, 1969 Repl. Vol.) Art. 81, § 324 (i) (3) it is not subject to the Maryland Retail Sales Tax if "separately stated from the consideration received for the tangible personal property transferred in the retail sale." Whenever a purchaser has defaulted in his payments and Farber's has determined that the remainder of the debt was not collectible, it has treated the balance as a bad debt and charged it to profit and loss. Then partial payments collected up to the time of that determination have been allocated by Farber's first to the "interest due" at the time of default as calculated by what is known as the "Rule of 78" and the re-

mainder to the "principal amount." For the purposes of our opinion we shall not be obliged to go into an explanation of the "Rule of 78."

The stipulated facts include:

"9. It has always been, since the enactment of the Sales Tax in 1947, the policy of the Retail Sales Tax Division to treat all payments made on an account as applying to each of the components of said account in the proportion that each bears to the total, that is Sales, Sales Tax, Carrying Charges, and any other extraneous charge included therein, allowing Appellant to treat all carrying charges originally billed to be included in the total price regardless of whether the account was written-off before all of those charges were earned. The Sales Tax Division has always treated all interest charges as being completely earned for the purpose of bad debt write-offs, even though in actuality the debt may be written off before the expiration of the entire period and before all of the interest is earned."

Under Code (1957, 1969 Repl. Vol.) Art. 81, § 329 the sales tax is to "be collected by the vendor from the purchaser at the time the sale is made regardless of the time when the purchase price is paid and delivered; unless the Comptroller [has] provide[d] by regulation in the case of credit or installment sales for the payment of the tax upon collection of the price or installments of the price or at some other time." As this Court noted in *Phillips v. Comptroller,* 224 Md. 350, 354, 167 A. 2d 913 (1961), a number of regulations were promulgated by the Comptroller to be effective simultaneously with the Retail Sales Tax Act on July 1, 1947. One was Rule 57 which provides:

"INSTALLMENT AND DEFERRED PAYMENT SALES

"The Vendor may adopt one of the following methods:

(a) Remit to the State on the 21st of each month the amount of tax due on all their net taxable sales during the previous month.

(b) Remit to the State on the 21st day of each month taxes collected as the result of an arrangement under which the purchaser would pay a Vendor with each periodic payment that portion of the total tax which the payment bears to the total amount to be paid.

"No Vendor who sells, assigns or pledges his accounts receivable may use the collection method (b) of paying such sales taxes. All such Vendors must pay the tax on an accrual basis (a).

"Any Vendor who has been using the collection method and who has, prior to the date of the amendment of this rule sold, assigned or pledged any or all of his accounts receivable must within thirty days of the effective date of this amendment convert to the accrual basis and pay over to the Sales Tax Division all sales taxes due on his accounts receivable or furnish a Surety Bond sufficient to cover the total of these outstanding taxes until such time as they have been paid in full.

"When the Vendor has elected to use either (a) or (b) of the above methods, he shall continue to use such method until he receives written permission from the Comptroller to adopt the other method."

Rule 57 presents the nub of this controversy. Under method (a) of Rule 57 Farber's remits each month "on

all [its] net taxable sales during the previous month." When an account proves uncollectible the position of Farber's is that it should be permitted to recover back from the Comptroller the tax not collected by it from its purchaser upon the basis of its bookkeeping methods, methods which might well be described as in accordance with "sound accounting practice." The Comptroller says that in that situation the computation should be made as though Farber's were remitting under method (b) of Rule 57, which would produce a lesser refund.

As Judge (later Chief Judge) Prescott pointed out in *Phillips*:

> "A careful analysis and consideration of this Rule [57] made it apparent that a vendor who elected to pay the tax on the installment basis, would receive an advantage over the taxpayer who paid the full tax at the time of the sale. The installment taxpayer would pay only as he collected cash, so, if he failed to collect, he would have no obligation to pay the tax to the Comptroller; whereas, the accrual taxpayer would have advanced the entire amount of tax at the time of the sale, and, upon failure to collect installment payments, would not only lose the value of his merchandise, but also a proportionate amount of the sales tax. In an effort to equalize more nearly the positions of the taxpayer who paid in full on the ordinary due date and the one who paid in installments, Rule 1 was adopted, which states:
>
> > 'Where the Vendor is unable to collect accounts receivable in connection with which he has already remitted the tax to the Comptroller, he may apply for a refund * * *. This rule shall apply only to such accounts as are found worthless and charged off during the taxpayer's taxable year.' " *Id.* at 355.

The issue in *Phillips* was whether the Comptroller's Rule 10 barred recovery to a vendor who remitted as does Farber's and who repossessed a part of the merchandise sold. The point was raised because that rule concluded by stating, "When any merchandise is repossessed, no tax shall be refunded." It was conceded by the Comptroller "that had [Phillips] sat idly by and let the machines 'go to pot,' and then complied with Rule 1, [Phillips] would have been entitled, under Rule 1, to a refund of the taxes paid." It contended, however, that because the machines had been repossessed recovery of any refund was barred. The Court held, "Such a result would not only be most unfortunate and unreasonable, but it would be unsound and untenable."

The tax court pointed out in this case:

> "Farber had elected to collect and remit the sales tax in accordance with Rule 57 (a). In the event Farber had elected to use method (b) of Rule 57 to collect and remit the tax, no refund or credit for tax would have occurred as they would not have collected nor remitted tax on payments in default."

As we see this case the question is not what is or is not a proper method for Farber's to use for its accounting purposes, but whether the Comptroller is correct in the method used by him for computation of any refund which may be due Farber's.

Farber's, of course, is concerned with the policy that will cause it to pay the very least tax to the State while the Comptroller, of course, desires the policy that will produce the most tax revenues for the State. This Court has commented many times upon long continued and unvarying construction applied by administrative officials, particularly such construction applied soon after enactment of a statute. We have further commented that such construction should not be disregarded except for the strongest and most cogent reasons, while rules and regulations adopted by administrative agencies to be valid

must be reasonable and consistent with the letter and policy of the statute under which the agency acts. *Frank J. Klein v. Comptroller,* 233 Md. 490, 493, 197 A. 2d 243 (1964) ; *Comptroller v. Rockhill, Inc.,* 205 Md. 226, 233, 107 A. 2d 93 (1954) ; *John McShain, Inc. v. Comptroller,* 202 Md. 68, 73, 95 A. 2d 473 (1953) ; and *Smith v. Higinbothom,* 187 Md. 115, 132-33, 48 A. 2d 754 (1946). We do not have here a "clear, unambiguous and mandatory" statute such as that commented upon by Chief Judge Hammond in *Beneficial Finance Co. v. Adm'r Loan Laws,* 260 Md. 430, 442, 272 A. 2d 649 (1971). A corollary of these rules is that statutes are not to be interpreted so as to lead to absurd consequences. *Coerper v. Comptroller,* 265 Md. 3, 6, 288 A. 2d 187 (1972) ; *Swarthmore Co. v. Kaestner,* 258 Md. 517, 527, 266 A. 2d 341 (1970) ; and *Pan Am. Sulphur v. State Dep't,* 251 Md. 620, 627, 248 A. 2d 354 (1968).

To hold in favor of Farber's would create the absurd result commented upon by Judge Prescott in *Phillips,* since the net sales tax paid to the Comptroller as a result of a sale by Farber's would be less than that which would be paid to the Comptroller in the case of a competitor next door to Farber's who made a sale for exactly the same number of dollars as Farber's and collected exactly the same number of dollars per month on that sale as Farber's but remitted under method (b) of Rule 57. The competitor would be entitled to no refund if the purchaser stopped paying although it would have paid into the treasury of this State more dollars on that transaction than the net amount Farber's would have paid. That would be an unfair, absurd result. The tax court was correct in its ruling.

*Order affirmed; appellant to pay the costs.*