# HALSEY *v.* BOARD OF EDUCATION OF GARRETT COUNTY, MARYLAND

[No. 81, September Term, 1974.]

*Decided February 4, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Walter S. Levin,* with whom were *Susan W. Russell* and *Sauerwein, Boyd & Decker* on the brief, for appellant.

*Ralph M. Burnett* for appellee.

*Amicus Curiae* brief filed by Maryland State Board of Education, *Francis B. Burch, Attorney General,* and *Malcolm R. Kitt, Special Assistant Attorney General,* on the brief.

MURPHY, C. J., delivered the opinion of the Court. SMITH, LEVINE and O'DONNELL, JJ., dissent and LEVINE, J., filed a dissenting opinion in which SMITH and O'DONNELL, JJ., concur at page 575 *infra.*

In June 1970, Virginia Jean Halsey entered into a "regular [teacher's] contract" with the Garrett County Board of Education to teach in the public schools of the county, effective with the fall term. The contract was in the form prescribed by Bylaw 621:2 of the State Board of Education; it provided, in effect, that it would continue from year to year, but that for a period not longer than two years, Mrs. Halsey would be a nontenured and probationary teacher whose employment could be terminated by the County Board, without cause, at the end of the first or second school year.[1] For two school years, Mrs. Halsey taught at the Green Street School, a place of learning for trainable, retarded children. In April 1972, she was notified by the County

---

1. The Public School Law of Maryland, Maryland Code (1957, 1969 Repl. Vol.) Art. 77, § 114 empowers the State Board to adopt bylaws providing for a probationary period of employment of teachers not to excced two years. Under the provisions of the regular teacher's contract, as set forth in Bylaw 621:2, a probationary teacher whose employment is not terminated by the end of the first or second year acquires tenure and thereafter cannot be discharged except for cause, and then only after notice and hearing. *See* Parker v. Board of Education of Prince George's County, Md., 237 F. Supp. 222 (D. Md. 1965), *aff'd,* 348 F. 2d 464 (4th Cir. 1965).

Board that her contract would be terminated at the end of the school year and that "[t]his decision is based on your lack of understanding of the needs of the children at the Green Street School." After the County Board denied her a hearing, Mrs. Halsey appealed to the State Board of Education, contending that the decision to terminate her contract was arbitrary and capricious since it could not have been based upon her teaching performance.

An evidentiary hearing was thereafter held before one of the State Board's hearing examiners; based on the record made in that proceeding, the State Board determined that there was evidence showing that "adequate grounds" existed for the County Board's decision that Mrs. Halsey was not qualified to be given a tenured position and that consequently the termination of her employment was neither arbitrary nor capricious. The State Board concluded, however, that since it was vested by law with a comprehensive visitatorial [2] power over the county school system, it was not limited to a mere technical review of the legal sufficiency of the County Board's decision to terminate Mrs. Halsey's contract. It held that the visitatorial power required it "to see to it that proper procedures are prescribed by the county school systems as part of their personnel policies and that these procedures are adhered to." From the evidence before it, the State Board found that Mrs. Halsey's "failings were not properly brought to her attention, that no observation was made of . . . [her] performance within the classroom, and that there was no written evaluation of the quality of her work." Because of "[t]hese defects," the State Board directed that Mrs. Halsey "should be given another chance, under better supervision and guidance"; it ordered the County Board "to offer Mrs. Halsey a new contract, which would take effect upon being signed by both parties

---

2. The terms, "visitorial" and "visitatorial" are used interchangeably. State v. Iowa Southern Utilities Co. of Delaware, 231 Iowa 784, 813, 2 N.W.2d 372, 388 (1942). Our decisions use the latter term when referring to the powers of the State Board of Education, see Wilson v. Board of Education, 234 Md. 561, 200 A. 2d 67 (1964) and the former when referring to the powers of the Circuit Court judges under Article IV, § 10 of the Maryland Constitution. See Peter v. Prettyman, 62 Md. 566 (1884).

and which would permit the probationary period to start running anew." It also ordered the County Board to institute and maintain "proper personnel procedures" throughout the county school system.

The County Board appealed to the Circuit Court for Garrett County, pursuant to the provisions of Code, Article 41, § 255, contending that the State Board acted in excess of its statutory authority and jurisdiction because its order that Mrs. Halsey be offered a new contract extended her probationary period beyond that permitted by law.

The court (Hamill, J.) held that once the State Board determined that the action of the County Board was not arbitrary or capricious, "the matter was then settled, and Mrs. Halsey's contract was terminated." The court noted that because the State Board was limited by Article 77, § 114 to providing for a probationary period of employment not to exceed two years, it "had no power or authority whatsoever to then attempt to change the established law with regard to tenure." It said:

"The law provides that a teacher when first employed will serve a probationary period not to exceed two years, during which time her services may be terminated without a hearing and without assigning any reasons therefor. If her services are not terminated in that period, she immediately acquires tenure upon the signing of her third year contract. She then acquires definitive rights with regard to her position and under what circumstances and procedures she can be terminated.

"The effect of the ruling of the State Board . . . under so-called 'visitatorial powers' is to change the law, and would be permitting a four year probationary period, two years beyond the statutory requirement [provided in Art. 77, § 114] of not more than two years. . . . It further creates a paradox in upholding the . . . County Board . . . by

> determining that its action was not arbitrary and capricious and denying the Petitioner's relief, but, at the same time, granting her relief by ordering her reinstated under a new contract and probationary period."

The court concluded that since termination was permitted by the provisions of the contract between Mrs. Halsey and the County Board, to hold that Mrs. Halsey's employment could not be terminated where the County Board's decision was neither arbitrary nor capricious "would, in effect, render such contracts useless and not binding."

On appeal from the lower court's order, Mrs. Halsey does not contest the State Board's finding that the County Board's decision to terminate her contract was supported by evidence and was therefore not arbitrary or capricious. She claims instead that the State Board's order that she be offered a "new contract, . . . which would permit the probationary period to start running anew" was within its visitatorial power and should have been affirmed. She contends that the State Board was "careful not to extend the probationary period *per se,* in violation of the law"; that the State Board in its superintendent role over the local public school system simply ordered that a new employment contract be tendered to her by the County Board as the only appropriate equitable remedy available in the circumstances.

The County Board, on the other hand, contends that the State Board's visitatorial power is not so broad as to authorize it to invalidate contractual obligations existing between a local school board and a nontenured teacher. It argues that nothing in the State Board's visitatorial power permits it to disregard the provisions of Art. 77, § 114 governing the length of nontenured probation; that by no stretch of semantic juggling can two years of probation plus another two years of probation equal other than four years of probation in plain violation of the statute.

"Educational matters affecting the State and the general

care and supervision of public education" are entrusted to the State Board by Code, Article 77 (Public Education), § 2. The State Board is authorized by § 7 to exercise "general control and supervision over the public schools and educational interest of the State." Section 6 provides that the State Board "shall determine the educational policies of the State; . . . [and] shall enact bylaws, rules and regulations for the administration of the public school system, which . . . shall have the force of law." It is further provided in § 6 that the State Board shall "explain the true intent and meaning of the law, and shall decide all controversies and disputes that arise under it, and their decision shall be final."

Section 34 of Article 77 places responsibility for "[e]ducational matters affecting the counties . . . under the control of a county board of education in each county." Section 41 requires county boards of education to "cause the provisions of . . . Article [77], the bylaws, rules and regulations, and the policies of the State Board . . . to be carried into effect." It is further provided by § 41 that, subject to the provisions of Article 77, and to the bylaws, rules and regulations of the State Board, the county board "shall determine . . . the educational policies of the county school system and shall prescribe rules and regulations for the conduct and management of the public schools in the said county school system." Among specific powers vested in county boards are the appointment and removal of all teachers. §§ 54, 62, 114. Section 68(a) provides that the qualifications and tenure of teachers shall be determined by the county boards of education.

In *Wilson v. Board of Education, supra*, 234 Md. at 565, we said that the totality of these statutory provisions "invests the State Board with the last word on any matter concerning educational policy or the administration of the system of public education." We there referred to the statutory authority of the State Board (citing *Wiley v. School Commissioners*, 51 Md. 401 (1879) and other cases) as " 'a visitatorial power of the most comprehensive character.' "

234 Md. at 565. In sustaining an order of the State Board, which set aside a resolution of a county board requiring fingerprint records of teachers to be transferred to local police, we held in *Wilson* that whether "viewed as an exercise of the rule-making power, as the resolution of a dispute, or as a matter of general control and supervision," the State Board's order "did not exceed its statutory authority." 234 Md. at 565-66. *See also Bernstein v. Bd. of Education*, 245 Md. 464, 226 A. 2d 243 (1967).

Of course, the visitatorial power of the State Board is not without limits. It cannot be asserted to finally decide purely legal questions. *Hobbs v. Hodges*, 176 Md. 457, 5 A. 2d 842 (1939); *Board of Education v. Cearfoss*, 165 Md. 178, 166 A. 732 (1932). Neither can the State Board exercise the visitatorial power fraudulently, in bad faith, or in breach of trust. *Coddington v. Helbig*, 195 Md. 330, 73 A. 2d 454 (1950). Another obvious limitation is that the visitatorial power cannot be exercised in direct contravention of statute. The State Board is manifestly of legislative creation; it has only such powers as the legislature has vested in it, expressly or by necessary implication. *See Purnell v. Shriver*, 125 Md. 266, 93 A. 518 (1915). *Cf. Peters v. Hobby*, 349 U. S. 331, 75 S. Ct. 790, 99 L. Ed. 1129 (1955); *Stark v. Wickard*, 321 U. S. 288, 64 S. Ct. 559, 88 L. Ed. 733 (1944). At one time, State Board bylaws were expressly required not to be at variance with statute. Ch. 463, Acts of 1874. This language was later eliminated. Ch. 506, Acts of 1916. But with or without such language, it is clear that "rules and regulations adopted by administrative agencies, to be valid, must be reasonable and consistent with the letter and policy of the statute under which the agency acts." *Farber's, Inc. v. Comptroller*, 266 Md. 44, 50-51, 291 A. 2d 658, 662 (1972); *Comptroller v. Rockhill, Inc.*, 205 Md. 226, 233, 107 A. 2d 93, 97 (1954). We said as much in *Metcalf v. Cook*, 168 Md. 475, 178 A. 219 (1935), a case involving an alleged conflict between a State Board bylaw requiring new teachers to graduate in the upper $^4/_5$ths of their class and an existing statute which provided that teaching certification may be issued to college graduates. And the Attorney General has stated his opinion

on at least two occasions that a State Board bylaw cannot countermand existing law. 50 Op. Att'y Gen. 173 (1965)[3]; 53 Op. Att'y Gen. 176 (1968).[4]

That the Board's visitatorial power does not stand on a footing higher than the statutes from which it is derived is clear from our holding in *Peter v. Prettyman, supra,* a case involving a visitorial power of a higher order, viz., that prescribed by Article IV, § 10 of the Constitution of Maryland authorizing the judges of the respective circuit courts to exercise supervision over the office and business of the Clerk of the Court.[5] In *Peter,* we held that where the legislature by statute had prescribed how court clerks were to be compensated for preparing an index, an order of court made pursuant to its visitorial power could not override the law and provide for a different method of compensation. Although § 10 vested broad power in the judges to determine how the clerks were to perform their duties, even to the point of prescribing small details such as which record books to use, we said:

"Legislative power was not intended to be given the

---

3.

"Since the power to control the school system in Baltimore City has, by statute, been delegated to the mayor and city council, the State Board of Education, in the absence of a valid repeal of such delegation, cannot countermand the statute by adopting bylaws inconsistent therewith."
50 Op. Att'y Gen. 173, 174 (1965)

4.

"While it is true that the State Board of Education may establish regulations to enforce the various provisions of Article 77 which pertain to the schools under its jurisdiction, the regulatory authority has limited scope and the Board may not establish further conditions in cases where there is an express, unqualified statutory provision controlling a particular situation."
53 Op. Att'y Gen. 176, 177 (1968)

5. Art. IV, § 10 provides:

"And the office and business of said Clerks, in all their departments, shall be subject to the visitorial power of the Judges of their respective Courts, who shall exercise the same, from time to time, so as to insure the faithful performance of the duties of said officers; and it shall be the duty of the Judges of said Courts respectively, to make, from time to time, such rules and regulations as may be necessary and proper for the government of said Clerks, and for the performance of the duties of their offices, which shall have the force of Law until repealed, or modified by the General Assembly."

574

judges in the sense of power to repeal existing statutes, and of taxing the public with the payment for services which were by the existing law required to be paid for by the individuals for whom, and at whose instance, the service was rendered." 62 Md. at 576.

The State Board, in a brief filed as amicus curiae, says that its order was wholly consistent with its duty and responsibility to properly administer the school system. It suggests that it was faced with this dilemma: For it to have held that the failure of the local school system to observe Mrs. Halsey's teaching performance in the classroom was arbitrary and capricious would have resulted in granting tenure to her in the face of substantial evidence that she was not qualified. To have affirmed the County Board's termination of Mrs. Halsey's employment, on the other hand, would mean that a County Board could blithely ignore the most rudimentary principles of educational administration in dealing with nontenured teachers. The only solution to the problem with which it was faced, the State Board maintains, was to allow the County Board to offer Mrs. Halsey a new contract as a nontenured teacher and permit her to work under appropriate supervision and guidance for a new probationary period, ultimately affording her tenure if her teaching performance justified it. The State Board claims that the basic purpose of the tenure law is to vest rights in teachers, not in county school systems, and that only a teacher could justly complain about a third or fourth probationary year. Since Mrs. Halsey has registered no such complaint, and because § 6 of Article 77 empowers the State Board to "explain the true intent and meaning of the law," the State Board suggests that its interpretation of the law should be accepted and that its order was not therefore in contravention of statute.

While we can readily appreciate both the logic of the State Board's position, and its purpose to remedy what it viewed as a failing on the part of the local school system in Mrs. Halsey's case in not providing professional observation and evaluation of her work as a probationary teacher, we can

only conclude that the effect of the State Board's order was to extend the probationary period beyond that authorized by § 114; consequently, the Board's order was in excess of its statutory authority or jurisdiction and must be reversed. Code, Article 41, § 255(g)(2). In so concluding, we reject the notion that despite the mandatory provisions of § 114 limiting the probationary period to a maximum of two years, the legislature intended that the State Board be vested with discretion in its superintendence and control of the public school system to extend the probationary period in any case where it believed it was in the educational interest to do so. We think it obvious that the two-year period prescribed in § 114 was intended, in part at least, to curb Board discretion in the matter of teacher tenure by requiring that a decision be made, one way or the other, within that time period.[6]

*Judgment affirmed; costs to be paid by appellant.*

*Levine, J., dissenting:*

Finding myself in disagreement with the majority in this case regarding its views on the two-year probationary period, I respectfully dissent.

Initially, I agree that the statutory authority of the State Board is " 'a visitatorial power of the most comprehensive character.' " *Wilson v. Board of Education,* 234 Md. 561, 565, 200 A. 2d 67 (1964); and that "the totality of these statutory provisions [of Article 77] 'invests the State Board with *the last word* on any matter concerning *educational policy or the administration of the system of public education.*' " (emphasis added).

As early as *Shober v. Cochrane,* 53 Md. 544 (1880), this Court affirmed the State Board's power over local school employees. In that case, Cochrane had been the secretary,

---

**6.** That part of the State Board's order directing the County Board to institute and maintain proper personnel procedures throughout the county school system was not contested by the County Board. *See* Wilson v. Board of Education, *supra.*

treasurer and examiner of the county school commissioners until they removed him and replaced him with Shober. Contrary to the decision of the local school commissioners, the State Board decided that the position belonged to Cochrane, and this Court upheld the State Board's authority over the matter. A similar result was reached in *Underwood v. School Board*, 103 Md. 181, 63 A. 221 (1906), where our predecessors, in holding that the State Board had the power to determine which of two persons should be recognized as a teacher of a school, stated, "There can be no doubt that the State Board had power to *advise* the County Board, and that it was the duty of the latter to follow the advice of the State Board on the subject." 103 Md. at 188 (emphasis in original).

This doctrine was followed in *Zantzinger v. Manning*, 123 Md. 169, 90 A. 839 (1914), a case in which the State Board had decided that a teacher was improperly dismissed and should be reinstated:

> ". . . In the case at bar the dispute is 'between functionaries of the department of public education'; the question to be determined is 'which of two persons shall be recognized as a teacher of a school,' and the issue is clearly one involving the proper administration of the public school system. The School Commissioners' control of high schools, and their authority to appoint the principals of said schools is subject to the provisions of the public school law of the State, and to the summary and comprehensive visitatorial power conferred by that law upon the State Board. . . ." 123 Md. at 181-82.

Similarly, in *School Com. of Car. Co. v. Breeding*, 126 Md. 83, 90, 94 A. 328 (1915), this Court said:

> "Cases may arise where a purely legal question is involved, as in *Duer v. Dashiell* [91 Md. 660 (1900)], and *School Commissioners v. Henkel*, 117 Md. 97, and which the Court has power to determine, but where the dispute is between 'functionaries of the department of public education,' or a question of

school administration is involved this Court has refused to decide it. . . ."

Thus, the Court concluded in *Wilson v. Board of Education, supra,* 234 Md. at 565, that

". . . [i]n any aspect the problem of screening employees is one of administrative policy, and the mere fact that the solution is initially within the scope of the County Board's authority *does not negative the power of the State Board* to review it and set it aside, as the cases cited demonstrate. . . ." (emphasis added).

*See also Metcalf v. Cook,* 168 Md. 475, 178 A. 219 (1935); *School Commissioners v. Morris,* 123 Md. 398, 91 A. 718 (1914); *Wiley v. School Comm'rs,* 51 Md. 401 (1879). This established line of authority makes it abundantly clear, therefore, that where, as here, the "educational policy or the administration of the system of public schools" is involved, the State Board possesses the authority to issue orders which the County Board must follow.

In the present case, even though she was never observed, evaluated, or criticized, Mrs. Halsey's contract was not renewed. The State Board, understandably concerned at this lack of proper personnel procedures, observed:

". . . we are troubled by the fact that her failings were not properly brought to her attention, that no observation was made of Mrs. Halsey's performance within the classroom, and that there was no written evaluation of the quality of her work. These defects in the procedures of dealing with a probationary teacher do not make an adequate teacher out of a teacher who is less than adequate, but they do make us believe that this teacher should be given another chance, under better supervision and guidance. In exercising our visitatorial power, we, therefore, call upon the Garrett County School System to offer Mrs. Halsey a new contract, which would take effect upon being signed by both parties and which would permit the probationary period to start running anew. . . ."

The State Board's authority to regulate proper personnel procedures, and to enforce such regulations in appropriate cases, is unquestionably a matter of public-school system administration, and involves a dispute between functionaries of the Department of Public Education. Since the power is summary and exclusive, the State Board has "the last word" in this matter.

As the majority has noted, there are limitations on the State Board's broad visitatorial powers, as in the case of pure questions of law or the fraudulent exercise of that power. The present case, however, comes within neither of these limitations. There is not the remotest suggestion of fraud, bad faith, or breach of trust on the part of the State Board. And, as noted, the issue here is one of proper administration of the public school system rather than a purely legal question.

Although I am also in agreement with the majority's general statement that "the visitatorial power cannot be exercised in direct contravention of statute[,]" I part company on its application of this principle to the facts of this case. The statutory provision purportedly violated by the State Board's order is Maryland Code (1957, 1969 Repl. Vol.) Art. 77, § 114, which, in its concluding sentence, simply provides that ". . . Nothing in this section shall preclude the State Board of Education from adopting bylaws providing for a probationary period of employment not to exceed two years." While this provision does not authorize the State Board to extend the probationary period beyond two years, it specifically empowers the State Board to provide for "a probationary period" of two years in accordance with its bylaws. Where, however, those bylaws have not been complied with, as was the case here, the teacher has not been given "a probationary period" at all. In short, the State Board is not extending Mrs. Halsey's probationary period to four years in this case, but is merely insisting, fully in accord with its visitatorial power, that she be afforded a proper "probationary period" in the first instance, one that complies with the Board's bylaws pertaining to correct personnel procedures.

Since the visitatorial power of the State Board encompasses this dispute, and since that visitatorial power has not been exercised in contravention of the statute, the judgment of the Circuit Court for Garrett County should be reversed, and the order of the State Board of Education reinstated. Judges Smith and O'Donnell authorize me to state that they concur in the views expressed herein.