667 A.2d 970

Kathy L. HURL

v.

**BOARD OF EDUCATION OF HOWARD COUNTY.**

**No. 193, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

Dec. 1, 1995.

James R. Whattam (Walter S. Levin, on the brief), Baltimore, for Appellant.

Judith S. Bresler (Reese and Carney, on the brief), Columbia, for Appellee.

Argued before FISCHER, DAVIS and HARRELL, JJ.

DAVIS, Judge.

Kathy L. Hurl, a Howard County school teacher, appeals from an order of the Circuit Court for Howard County (Dudley, J.) that affirmed an administrative decision of the Maryland State Board of Education (State Board). This administrative decision affirmed the refusal of appellee, Board of Education of Howard County, to grant appellant a full evidentiary hearing concerning the appeal of her involuntary trans-

fer to a teaching assignment at a different school. Two issues are presented on this appeal, which we restate as follows:

I. Is there a proper basis in this case for judicial review of the State Board's decision made pursuant to its "visitorial power"?

II. Did the trial court err in affirming appellee's administrative decision not to grant appellant a full evidentiary hearing concerning the appeal of her involuntary transfer to a different school?

We answer the first question in the affirmative, but answer the second question in the negative. As a result of our disposition of the second question, we affirm the judgment of the circuit court.

## FACTS

Appellant has been a school teacher in the Howard County school system since September 1974. From the beginning of her employment through the end of the 1991–92 school year, with the exception of two brief interruptions, appellant was assigned to Waterloo Elementary School. Appellant states that on June 15, 1992, Edward Alexander, Instructional Director of Elementary Schools, advised her that she was to be involuntarily transferred from Waterloo Elementary School to Waverly Elementary School. According to appellant, when she asked Alexander why she was being transferred, Alexander said that she would have to discuss the matter with Dr. Michael Hickey, Superintendent of Schools (Superintendent). Alexander did say, however, that the Superintendent ordered this transfer "for the good of the school system." Appellant was apparently one of several teachers to be transferred that year.

On June 24, 1992, Dr. James R. McGowan, Associate Superintendent for Instruction and School Administration, wrote appellant a letter, wherein he stated that the Superintendent determined that the involuntary transfer was "both in [her] best interest and the interest of the schools...." McGowan further stated that the Superintendent believed that after

many years at Waterloo, the transfer would present appellant with a "new challenge" and an "opportunity to reinvigorate" her teaching skills.

Needless to say, appellant was surprised by the involuntary transfer. According to appellant, no one ever advised her of the possibility of being transferred. In addition, appellant states that she never received any negative performance evaluations or any indications that she needed a new challenge or needed her skills to be reinvigorated.

After the transfer, a parent of one of appellant's Waterloo students complained to the Superintendent about appellant's involuntary transfer. In response, the Superintendent wrote a letter dated July 14, 1992, explaining that appellant's transfer was for "the interest of the school system as a whole," and that appellant would "be well served by the change." He added that the transfer was "in no way a reflection on [appellant's] capabilities or her past record of service to the school system."

Because of her dissatisfaction with the transfer, and also because of what she believed to be the absence of any meaningful reason for the transfer, appellant appealed her transfer to the Superintendent pursuant to MD.CODE ANN., EDUC. § 4–205(c). This appeal was filed through a representative of the Howard County Education Association by letter dated July 9, 1992 (appeal letter). The appeal letter alleged that appellant's involuntary transfer was "arbitrary and capricious, and discriminatory," and requested a hearing on the matter. The appeal letter set forth the following seven "series of events" that appellant asserted supports her position that the transfer was "arbitrary and capricious, and discriminatory":

(1) For Seventeen (17) years Ms. Kathy Hurl has been a teacher at Waterloo Elementary School. During her tenure, she has successfully taught numerous grade levels of students.

(2) On June 15, 1992, Ms. Hurl was called into her administrator's office for a meeting without forewarning. In attendance was Mr. Edward Alexander, Elementary

School Instructional Director, who informed Ms. Hurl that at the request of the Superintendent, she was being involuntarily transferred to Waverly Elementary School.

(3) When Ms. Hurl questioned Mr. Alexander about the reasons for this action, he replied that it was "for the good of the system." Although Ms. Hurl repeatedly asked for specific reasons, her efforts were in vain.

(4) On June 18, 1992, Ms. Hurl received an impersonal memorandum from Dr. James McGowan's office, re: Change in Assignment from Waterloo Elementary to Waverly Elementary. The memo noted no effective date, no account number, and gave no rationale for Ms. Hurl's involuntary transfer.

(5) On June 19, 1992, Ms. Hurl requested a meeting with the Superintendent and all relevant parties regarding her involuntary transfer per Article VI of the Master Agreement 1990–93. The meeting was requested because Ms. Hurl protested the involuntary transfer and requested written reasons for the transfer.

(6) On June 24, 1992, a meeting was held with Ms. Hurl, HCEA [Howard County Education Association], Dr. McGowan (superintendent designee), and Mr. Edward Alexander. At that meeting, Ms. Hurl voiced her objection to the involuntary transfer and again requested specific reasons for the decision. At that meeting Ms. Hurl was given a letter from Dr. McGowan that in essence stated that "after reviewing the needs of the school, the Superintendent felt that it was in Ms. Hurl's best interest and the interest of the schools to transfer her to a new environment to present a new challenge and an opportunity to *reinvigorate* her teaching skills." (edited/emphasis).

(7) Ms. Hurl was then instructed to fill out an involuntary transfer request form and return it to Dr. McGowan by July. Ms. Hurl complied immediately, but to date her desired placement has not been secured.

**294**

In addition, the appeal letter set forth the following ten "reasons" or bases for appellant's contentions that the involuntary transfer was arbitrary, capricious, and discriminatory:

(1) Ms. Hurl has been a successful teacher for the Howard County Public System for 17 years;

(2) During her tenure at Waterloo Elementary School, she has received positive and satisfactory evaluation performance assessments, successfully teaching a diversity of grade levels;

(3) Ms. Hurl is a senior staff member at Waterloo Elementary School who has provided and can continue to provide a positive learning environment by sharing expertise, continuity and assistance to students, colleagues, and other members of the educational community;

(4) Ms. Hurl did not receive due process protections afforded her via MCPSS policies and procedures, statutory law and the Master Agreement (i.e. anti-discrimination, requests for volunteers, consultation, notification and identification);

(5) There are younger and less senior staff members at Waterloo Elementary School who were retained;

(6) Ms. Hurl was not presented with specific reasons in a timely manner;

(7) Ms. Hurl was not given the opportunity to consider any options to an involuntary transfer;

(8) Ms. Hurl was not forewarned or timely informed of any transfer decision thus preventing her equal access and full opportunity for sufficient considerations regarding vacancies;

(9) Ms. Hurl was never informed by anyone in a supervisory capacity (i.e. school principal, supervisor, Instructional Director, Superintendent) that she needed to be challenged or reinvigorated in a new environment. In fact, Ms. Hurl received no indication that her current assignment was in jeopardy;

(10) The reasons presented in writing are based upon subjective rationale, not objective criteria. Notwithstanding, the subjective rationale is without merit and is discriminatory.

By letter dated August 28, 1992, the Superintendent denied appellant's request that the transfer be rescinded, stating that his decision to transfer appellant was pursuant to his statutory authority under MD.CODE ANN., EDUC. § 6–201(b)(2)(ii) to transfer teachers "as the needs of the schools require." Furthermore, the Superintendent's letter stated that the ten reasons cited in appellant's appeal letter did not give rise to a "conclusive inference that [appellant's] administrative transfer was based upon 'arbitrary and capricious and discriminatory' factors." Rather, the Superintendent's letter continued, "the seven enumerated 'series of events' and ten claimed bases to justify [appellant's] contentions are, in my opinion, broad, brush/stroke allegations that constitute summarizations of [appellant's] opinions and wishes, rather than specific factors which support [appellant's] alleged charges of discrimination or arbitrariness."

As a result, appellant filed an appeal with appellee pursuant to MD.CODE ANN., EDUC. § 4–205(c), and requested a hearing. Appellant and appellee submitted affidavits and other exhibits in support of their respective positions. In response to an October 5, 1992 letter from Deborah D. Kendig, Chairman of the Board of Education of Howard County, which requested submission of documents, affidavits, and argument, appellant's counsel requested a full evidentiary hearing by letter dated October 30, 1992. Furthermore, also in response to Kendig's October 5, 1992 letter, the Superintendent's counsel argued that appellant was not entitled to a full evidentiary hearing because appellant's allegations were insufficient to entitle her to such a hearing under *Anderson & Blake v. Board of Educ. of Prince Georye's County*, 5 Ops. of MSBE 415 (1989), an earlier published opinion of the State Board.

Without a full evidentiary hearing, but after oral argument from counsel for both parties, appellee, by written decision

dated December 4, 1992, denied appellant's transfer appeal and affirmed the Superintendent's decision. In so doing, appellee stated that "[i]t is Appellant who has the burden of establishing through specific allegations that the decision to involuntarily transfer her was based on improper and illegal motives, such as those set forth in § 6–105 of the Education Article, or was made arbitrarily. That burden has not been satisfied from the record before us." Appellee also ruled that the Superintendent's stated reason for the transfer, i.e., for the good of the school, was legitimate in view of the Superintendent's statutory authority to transfer teachers.

Appellant then filed an appeal with the State Board pursuant to MD.CODE ANN., EDUC. § 4–205(c)(4). Appellant's Notice of Appeal stated that appellee erred as a matter of law by refusing to grant a hearing to appellant under the holding of *Anderson & Blake*. She also argued that appellee erred as a matter of law by upholding the involuntary transfer decision.

The State Board issued a written decision after written and oral arguments by counsel. In an opinion dated June 30, 1993, the State Board granted appellee's "Motion for Summary Affirmance," thereby affirming appellee's decision. Under COMAR 13A.01.01.03K(1), the "State Board may issue a decision on a motion for summary affirmance when there are no genuine issues as to any material facts." Relying on *Anderson & Blake*, the State Board held that appellee was correct in not conducting a full evidentiary hearing because appellant failed to allege specific facts of unlawful discrimination or arbitrariness.

As a result of the State Board's decision, appellant appealed to the Circuit Court for Howard County. The only issue before the circuit court was whether appellant's appeal letter alleged sufficient facts to entitle her to a full evidentiary hearing under the standards set forth in *Anderson & Blake*. After independent review of the entire record, the circuit court concluded that the appeal letter did not contain specific factual allegations of unlawful discrimination or arbitrariness. The circuit court, therefore, affirmed the State Board's decision

and adopted it as the opinion of the circuit court. It is from this order that appellant appeals.

Before reaching the merits of this appeal, it is important to make one final factual observation. The Superintendent did not single appellant out by involuntarily transferring her to a different teaching assignment. Originally, appellant was one of five similarly-situated teachers challenging the Superintendent's involuntary-transfer decision. Appellant's counsel represented all five teachers in the matter. According to appellant's brief, four of the five cases were resolved, leaving appellant's case as the sole remaining controversy. These five teachers were involuntarily transferred to different teaching assignments, despite having satisfactory evaluations. Indeed, the five teachers alleged that they were transferred without warning, and without any indication that they were experiencing performance difficulties. All five teachers believed that the Superintendent's explanation for the transfers was insufficient. In fact, according to appellant's counsel's October 30, 1992 letter to Kendig (discussed above), the Superintendent's explanations for transferring these teachers were identical for each teacher.

This appears to be correct. In his November 19, 1992 affidavit (discussed in further detail below) submitted in response to Kendig's October 5, 1992 letter (discussed above), the Superintendent explained his reasoning for transferring the five teachers. He stated that through his observation and experience, teachers, although having received satisfactory performance evaluations, generally experience professionally positive and beneficial effects from being transferred to a different teaching assignment. The Superintendent further stated that the five teachers were not transferred for disciplinary reasons, and that these teachers would not lose any professional advantages, e.g., salary or promotional opportunities, as a result. Significantly, the Superintendent pointed out in his affidavit that "the final report on *Project Toward The Year 2000,* submitted to the Board of Education of Howard County on September 14, 1987, included a recommendation to, 'provide for professional rejuvenation at the school level

through periodic rotation of staff members within buildings *or between schools.'* " (Emphasis added by Superintendent).

Armed with these facts, we next address the questions presented.

## LEGAL ANALYSIS

### I

We first discuss appellee's argument that appellant failed to show a basis for this Court's review of the State Board's decision. Contrary to this assertion, there is a sufficient basis for judicial review of the State Board's decision. We explain.

■ As both parties recognize in their briefs, as a result of a combination of legislation and longstanding case law, the State Board has the "last word" on controversies or disputes involving the proper administration of the public school system, thereby leaving the courts of this State with limited power to interfere. *Board of School Comm'rs v. Morris,* 123 Md. 398, 403, 91 A. 718 (1914); *See also Board of Educ. v. Hubbard,* 305 Md. 774, 788, 506 A.2d 625 (1986) (comprehensively citing Maryland cases recognizing this principle); *Board of Educ. v. Barbano,* 45 Md.App. 27, 42–44, 411 A.2d 124 (1980). This broad and comprehensive power, referred to as the State Board's "visitorial power," *id.,* arises out of the Education Article of the Annotated Code of Maryland. Section § 2–205(e) of the Education Article states:

(1) Without charge and with the advice of the Attorney General, the State Board shall explain the true intent and meaning of the provisions of:

(i) This article that are within its jurisdiction; and

(ii) The bylaws, rules, and regulations adopted by the Board.

(2) The Board shall decide all controversies and disputes under these provisions.

(3) The decision of the Board is *final.*

MD.CODE ANN., EDUC. § 2–205(e)(1)–(3) (1992) (emphasis added).

Subject to this provision, each county superintendent "shall explain the true intent and meaning of: (i) The school law; and (ii) The applicable bylaws of the State Board." *Id.* at § 4–205(c)(2). As part of the State Board's broad authority, § 4–205(c)(4) provides that a decision of a county superintendent may be appealed to the county board, and then further appealed to the State Board. Thus, appeals concerning the intent and meaning of a provision of the Education Article or of a State Board bylaw are taken from the county boards to the State Board. *See Hubbard,* 305 Md. at 789, 506 A.2d 625; *Board of Educ. v. Lendo,* 295 Md. 55, 65–66, 453 A.2d 1185 (1982).

Although the State Board's decisions regarding the administration of Maryland's public schools are "final" and beyond judicial interference, there are four basic exceptions to this rule, as the parties both recognize. Essentially, judicial review is available where:

(1) the matter involves a purely legal question. *See, e.g., Wilson v. Board of Educ.,* 234 Md. 561, 565 [200 A.2d 67] (1964); *Board of Educ. v. Cearfoss,* 165 Md. 178, 186–87 [166 A. 732] (1933);

(2) the State Board has contravened state statute. *See, e.g., Halsey v. Board of Educ.,* 273 Md. 566, 572 [331 A.2d 306] (1975). *Cf. Board of Educ. v. Waeldner,* 298 Md. 354, 362 [470 A.2d 332] (1984); *Wilson,* 234 Md. at 566 [200 A.2d 67];

(3) the State Board exercised its power in bad faith, fraudulently, or in breach of trust. *See, e.g., Halsey,* 273 Md. at 572 [331 A.2d 306]; *Wilson,* 234 Md. at 565 [200 A.2d 67] (citing *Coddington v. Helbig,* 195 Md. 330, 337–38 [73 A.2d 454] (1950); or

(4) the State Board exercised its power arbitrarily or capriciously. *See, e.g., Zeitschel v. Board of Education,* 274 Md. 69, 81–82 [332 A.2d 906] (1975).

Appellee argues that appellant has failed to assert any of these reasons as a basis for our review of the State Board's decision. Initially, we note that neither here nor in any of the proceedings below has appellant raised the issue that the State Board's decision affirming the denial of a hearing was (1) in contravention of a state statute; (2) in bad faith, fraudulent, or in breach of trust; or (3) arbitrary or capricious. This, therefore, eliminates three of the four above-outlined grounds for our review. MD.RULE 8–131(a).

■ While never directly stating so, appellant appears to take the position that we can review the State Board's decision under the first exception. Appellant framed her issue as one involving a question of law. In other words, appellant suggests that the State Board made an error of law when it held that the appellant's factual allegations were insufficient to entitle her to a full evidentiary hearing on a transfer dispute under the holding of a prior State Board administrative decision. This, according to appellant, provides this Court with the proper foundation for reviewing the State Board's decision in this appeal. Appellee, on the other hand, argues that appellant failed to allege that this case presents a purely legal question because she has merely alleged a misapplication of a prior *administrative* decision. In order to resolve this issue, we must examine the prior administrative case and determine exactly what function the State Board performed below.

*Anderson & Blake v. Board of Educ. of Prince George's County,* 5 Ops. of MSBE 415 (1989), as noted above, is a prior published opinion of the State Board. While the practice of publishing administrative adjudicatory decisions is common at the federal level, *See, e.g.,* CCH FEDERAL ENERGY REGULATORY REPORTS (OPINIONS, ORDERS, & DECISIONS); CCH FEDERAL SECURITIES LAW REPORTER (SEC RULINGS), it is quite uncommon in Maryland. The rule announced by the State Board in *Anderson & Blake* is simple:

[A] full evidentiary hearing is required on review of a transfer decision only if the Appellant alleges that the transfer was in violation of Section 6–105 of the Education

Article, or that the transfer constituted an abuse of the discretionary transfer power of the superintendent. The allegation must include specific facts which the Appellant believes supports the charge of discrimination or arbitrariness.

*Id.* at 417. Previously, State Board administrative case law held that although a transfer may be reviewed by a county board, and if necessary, by the State Board, a full evidentiary hearing is not required under due process principles. *Id.* at 417.

In arriving at the rule announced in *Anderson & Blake,* the State Board recognized that a county superintendent has broad statutory authority to transfer teachers " 'as the needs of the schools require.' " *Id.* at 416 (quoting MD.CODE ANN., EDUC. § 6–201(b)(2)(ii) (1992)). The State Board noted that the only statutory limitation on this "wide latitude" is MD.CODE ANN., EDUC. § 6–105 (1992), which prohibits discrimination in matters relating to teacher employment, including transfers based on race, religion, color, national origin, handicap, or gender. *Id.* The State Board further noted that the only other limitation on this transfer power is the common law limitation that the county superintendent cannot act arbitrarily. *Id.* at 416–17 (citing *Resetar v. State Bd. of Educ.,* 284 Md. 537, 553, 399 A.2d 225 (1979)).

In the instant case, the State Board treated the application of *Anderson & Blake* to the factual allegations as a question of law. The State Board's June 30, 1993 opinion analyzed the dispute based on the issue as framed by appellant—"that the local board erred as a matter of law by refusing to grant her an evidentiary hearing, since she believes her appeal sets forth specific allegations of arbitrary and capricious action by the superintendent." Additionally, the State Board's decision granted appellee's "Motion for Summary Affirmance." In order to grant such a motion under COMAR 13A.01.01.03K(1), there could be "no genuine issues as to any material facts." Furthermore, the State Board expressly agreed with appellee's position that appellant "failed to allege specific facts which, if true, show abuse of discretion [by the Superinten-

dent]." Finally, the State Board stated that "specific factual allegations of unlawful discrimination or arbitrariness" have not "been asserted in this case." There can be no doubt, therefore, that the State Board held that, as a matter of law under *Anderson & Blake,* appellant's factual allegations were insufficient for a full evidentiary hearing. In this regard, the State Board's decision is akin to that of a trial court granting judgment as a matter of law because no genuine dispute of material facts exists. *See, e.g.,* MD.RULE 2–501.

Appellee's argument, however, seems to be that the State Board's alleged misapplication or misinterpretation of *Anderson & Blake* to appellant's appeal allegations does not involve a question of law because *Anderson & Blake* is merely a prior administrative decision. In other words, the gist of appellee's argument apparently is that appellant's position is that the State Board committed "*administrative* error when it applied its own standards for determining when a teacher is entitled to a full hearing to the facts of this case." (Emphasis added.)

We, however, view the rule in *Anderson & Blake* as law. State Board "bylaws, rules, and regulations have the force of law when adopted and published." MD.CODE ANN., EDUC. § 2–205(c)(2) (1992). Although perhaps not found in the education regulations of COMAR, or in published State Board of Education bylaws, the rule in *Anderson & Blake* nonetheless has precedential and binding effect by virtue of the fact that it was adopted as such in an adjudicatory decision and was published. *See CBS v. Comptroller of the Treasury,* 319 Md. 687, 691–94, 575 A.2d 324 (1990) (administrative agencies may adopt rules through administrative adjudicatory decisions); KENNETH CULP DAVIS & RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 6.6. (3d ed. 1994). Therefore, appellant's challenge to the State Board's interpretation and application of *Anderson & Blake* is a legal issue. *Department of Human Resources v. Thompson,* 103 Md.App. 175, 191, 652 A.2d 1183 (1995).

Our holding in this regard is bolstered by *Board of School Comm'rs v. James*, 96 Md.App. 401, 421–25, 625 A.2d 361 (1993), wherein this Court discussed certain legal principles relevant to the issue at hand. Although *James* focused on the *Accardi* doctrine, under which an agency is required to follow its own rules where conferring important procedural benefits on an individual as opposed to mere internal administrative procedures or guidelines, the discussion therein is instructive here. We noted that "determination of whether a federal regulation is a legislative rule, on one hand, or internal procedure, on the other hand, 'turns' on whether it 'affects individual rights and obligations' and whether the agency intended the rule to be legislative as 'evidenced by such circumstantial evidence as the formality that attended the making of the law, including the rule making procedure and publication.' " *Id.* (quoting Peter Raven–Hansen, *Regulatory Estoppel: When Agencies Break Their Own "Laws,"* 65 Tex. L.Rev. 1, 16 (1985) and "numerous cases cited therein"). Certainly, the rule in *Anderson & Blake* appears to be intended primarily to confer important procedural benefits and safeguards to teachers. We see no other reason for a rule granting a full evidentiary hearing to teachers who are transferred for discriminatory or arbitrary reasons. In addition, we observe that the State Board intended that it be bound by *Anderson & Blake* by virtue of the fact that the State Board published that decision and applied it as an administrative precedential rule of law in the instant case. In fact, the "motion for summary affirmance" regulation specifically requires briefs in support or in opposition thereof to contain an "argument which includes relevant State Board decisions, if any." COMAR 13A.01.01.03K(2)(c).

In light of (1) the manner in which the State Board rendered its decision; (2) our view that *Anderson & Blake* has the full "force of law"; and (3) our statement in *Department of Human Resources v. Thompson* that a challenge to a regulatory interpretation is a legal issue, we hold that the State Board's interpretation and application of *Anderson & Blake* involves a pure question of law. Appellant, therefore, has a

proper basis upon which to seek review of a decision of the State Board pursuant to its "visitatorial power." As is demonstrated in the next part of this opinion, however, this result is a hollow victory for appellant.

## II

Appellant argues that the trial court erred in affirming the State Board's administrative decision not to grant appellant a full evidentiary hearing concerning the appeal of her involuntary transfer to a different school. In this regard, appellant asserts that the trial court should have reversed the State Board because the State Board erred as a matter of law in its application and interpretation of *Anderson & Blake* to appellant's appeal allegations.

### A

Before reaching the merits of appellant's argument, we shall address the appropriate standard of review. We first note that both parties are of the opinion that the Administrative Procedures Act (APA) does not apply to this appeal because they do not believe that the State Board's decision in this case fits within the APA's definition of "contested case" under MD.CODE ANN., STATE GOV'T § 10–202(d) (Supp.1994). We need not decide whether the APA applies to this case, because the circuit court nonetheless retains the power to review agency decisions to prevent illegal, unreasonable, arbitrary or capricious administrative action and we have authority on direct appeal to review the circuit court's exercise of that power. *Dickinson–Tidewater, Inc. v. Supervisor of Assessments*, 273 Md. 245, 255–56, 329 A.2d 18 (1974) (citing *Heaps v. Cobb*, 185 Md. 372, 379–80, 45 A.2d 73 (1945)); *Insurance Comm'r v. National Bureau of Cas. Underwriters*, 248 Md. 292, 300, 236 A.2d 282 (1966); *Harford Memorial Hosp. v. Health Serv. Cost Review Comm'n*, 44 Md.App. 489, 506, 410 A.2d 22 (1980). *See also Barbano*, 45 Md.App. at 43 n. 8, 411 A.2d 124. Therefore, because this appeal involves the allegation that the State Board's action denying appellant a hearing

under applicable standards of law was illegal, we may review it.

Even though the APA may not apply here, our analysis of Maryland case law indicates that the standards of judicial review of agency decisions are essentially the same whether proceeding under the APA or pursuant to our inherent power to review administrative actions. *Dickinson–Tidewater,* at 256, 329 A.2d 18; *Ocean City v. Purnell–Jarvis, Ltd.,* 86 Md.App. 390, 401–02, 586 A.2d 816 (1991); *Harford Memorial Hosp.,* at 506, 410 A.2d 22. As a result, therefore, it is appropriate for this Court to examine and rely upon cases decided under the APA for guidance regarding the appropriate standard of review of the State Board's decision.

 To the extent issues on appeal turn on the correctness of an agency's factual findings, such evidence is reviewed under the substantial evidence test. *Thompson,* 103 Md.App. at 190, 652 A.2d 1183. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support an agency's conclusion. *Id.* (citing *Supervisor of Assessments v. Group Health Ass'n,* 308 Md. 151, 159, 517 A.2d 1076 (1986) (quoting *Bulluck v. Pelham Wood Apartments,* 283 Md. 505, 512, 390 A.2d 1119 (1978)). "In contrast to factual challenges, the substituted judgment standard is used with respect to a claim that the agency erred as a matter of law." *Thompson,* at 191, 652 A.2d 1183. Because we are determining whether it was proper for the State Board to conclude that the allegations of this case, even if true, failed as a matter of law under *Anderson & Blake* to include specific facts that the Superintendent's decision to transfer appellant was arbitrary and capricious, we may substitute our judgment for that of the State Board's. *Id.* Even under this very broad standard of judicial review of an agency decision, we hold that the State Board's decision was legally correct as a matter of law.

**B**

 Appellant asserts that the State Board erred in applying *Anderson & Blake* to the undisputed facts of her case. In

this regard, appellant argues that her appeal letter and other exhibits contained sufficient facts to indicate that the Superintendent acted arbitrarily, capriciously, and discriminatorily in transferring her to a different school. We hold that none of appellee's facts allow for even the slightest inference that the Superintendent acted either arbitrarily and capriciously or discriminatorily. We explain.

In order to determine whether the appellant sufficiently alleged facts of "arbitrariness and capriciousness," we first must define what is meant by those terms. "Decisions contrary to law or unsupported by substantial evidence are not within the exercise of sound administrative discretion, but are arbitrary and illegal acts." *Department of Health v. Walker,* 238 Md. 512, 523, 209 A.2d 555 (1965). *See also Hackley v. City of Baltimore,* 70 Md.App. 111, 116, 519 A.2d 1354 (1987). BLACK'S LAW DICTIONARY (6th ed. 1990) (citations omitted) defines the term "arbitrary" as including something done "[w]ithout adequate determining principle," "nonrational," and "[w]illful and unreasoning action, without consideration and regard for facts and circumstances presented"; and the term "arbitrary and capricious" as "willful and unreasonable action without consideration or in disregard of facts or law or without determining principle." Finally, the State Board regulations define decisions of a county board as being "arbitrary" where "contrary to sound educational policy" and/or where a "reasoning mind could not have reasonably reached the conclusion the county board reached." COMAR 13A.01.01.03E(1)(b).

With these definitions in mind, we address appellant's specific allegations to determine whether under *Anderson & Blake* they contain specific facts from which it is possible to conclude or infer that the transfer decision was arbitrary or capricious. In this regard, we first examine appellant's appeal letter.

While appellant's appeal letter states that the Superintendent's decision was arbitrary and capricious, the factual allegations contained therein do not support such a claim. Initially we address the seven "series of events" presented in the

appeal letter. The first, second, fourth, fifth, and seventh events in the "series of events" provide nothing more than a factual background and in no way indicate arbitrariness or capriciousness on the part of the Superintendent. From these factual allegations it is impossible to draw any type of inference that the transfer decision was arbitrary or capricious.

The third and sixth events in the "series of events" set forth the reasons given to appellant for her transfer, i.e., the transfer was "for the good of the system," and would present appellant with a new environment within which to take on new challenges and reinvigorate her teaching skills. Certainly, on their face, these allegations do not indicate that the Superintendent acted arbitrarily or capriciously. On the contrary, these are quite rational reasons upon which a superintendent might rely in making a decision to transfer a teacher from one school to another. As noted earlier, the *Project Toward The Year 2000* report suggests that the periodic rotation of staff between schools is a matter of adopted local educational policy in Howard County. Again, there are no "specific allegations" of arbitrariness or capriciousness in these facts.

We next discuss the ten "reasons" outlined in appellant's appeal letter for her contentions that the Superintendent's transfer decision was arbitrary and capricious. We address the first, second, third, fifth, and ninth reasons collectively because these in essence argue the same point. Taken together, appellant argues that the transfer must have been arbitrary in view of the fact that appellant has been a successful and experienced veteran teacher for many years at Waterloo, who has always received positive and satisfactory performance evaluations and who has never been informed that she needed a new challenge or needed her skills reinvigorated. This argument might have merit if the Superintendent transfers teachers only when they are unsuccessful or inexperienced. As appellant has recognized, this is not the case. Successful veteran teachers are not immune from being transferred. In fact, such teachers may be transferred for the very reason that they are successful and experienced. Appellant recognized this in the hearing before the trial court. As the

Superintendent stated in his affidavit dated November 19, 1992:

[T]he administrative transfer of a teacher, whose evaluations demonstrated totally satisfactory performance, can not and should not be viewed either by that teacher, or others, as an indication of dissatisfaction, or means of punishment, from his superiors at the School System's central offices, in general, or in that teacher's specific school building, in particular;

\* \* \* \* \* \*

[I]t has been my observation and experience that in most instances, once a classroom teacher, although having received satisfactory evaluations of performance, is never-the-less [sic] administratively transferred to another setting, such transferred certificated professional will inevitably accept the new assignment and demonstrate a rejuvenation of and dedication to their professional career, all to the end result that such transfer will be determined to have been in the best interest of the individual so transferred.

Thus, it is impossible to infer that the transfer of a successful and/or a veteran teacher is arbitrary and capricious by its very nature. Accordingly, the allegation of a teacher's success and experience is not, as a matter of law, a specific allegation of arbitrary or capricious administrative decision making.

Similarly, it is impossible to infer that the decision was arbitrary merely because the teacher was never forewarned that she needed a new challenge or needed her skills to be reinvigorated where the superintendent offers as reasons for the transfer an opportunity for a new challenge and reinvigoration of skills. As the Superintendent explained, in his experience, simply because a teacher is successful and has consistently received positive evaluations, does not mean that he or she cannot benefit from a change of environment. While appellant may not agree with the reasoning behind the Superintendent's decision to transfer her, this does not transform the reasoning into arbitrariness and capriciousness. This

allegation, as a matter of law, fails to indicate how the Superintendent's decision was allegedly "contrary to sound educational policy" and/or such that a "reasoning mind could not have reasonably reached the conclusion the [Superintendent] reached."

We now turn to the fourth, sixth, seventh, and eighth reasons outlined in appellant's appeal letter. We address these reasons together because collectively they argue that the transfer decision was arbitrary in view of the fact that appellant was not afforded certain procedural benefits. In this regard, appellant argues that we can infer that the transfer decision was arbitrary because she was not, for example, properly consulted and notified, "presented with specific reasons in a timely manner," "given the opportunity to consider any options," or "forewarned or timely informed of any transfer decision." Assuming the truth of these allegations is of no help in our search for whether the decision was arbitrary. Just because, for example, appellant was not given an opportunity to consider her options does not make the decision arbitrary. These allegations shed no light on the issue of arbitrariness. Once again, the State Board was legally correct in determining that these are not specific allegations of arbitrary agency decision making.

Next, we address the tenth reason in appellant's appeal letter. Appellant argues that the decision to transfer her was arbitrary because the reasons given were based on a "subjective rationale, not objective criteria," and the "subjective rationale is without merit and discriminatory." We reject this as a specific allegation of arbitrariness and capriciousness. First, appellant has not shown, nor have we found, anything to indicate that a superintendent is forbidden from making a transfer decision based on his subjective professional judgment. Second, even if his or her subjective rationale is without merit, that does not mean the decision is arbitrary.

In her brief, appellant urges us to consider the "extensive documentary exhibits (including a copy of her entire personnel file) and affidavits to the County Board," which "extensively

detailed her crystalline work record and the absence of any facially apparent reason for the transfer" and which "thoroughly recounted the Appellant's repeated and unsuccessful efforts to obtain an explanation for the 'reason' for the transfer from the Superintendent or his designees." Again, as we explained above, a "crystalline work record" does not insulate a teacher from being transferred and may in fact be the very reason for a transfer. Therefore, we cannot infer that a decision to transfer appellant in light of these exhibits is arbitrary.

Although appellant alleges that she made "repeated and unsuccessful efforts to obtain an explanation" for the reason for her transfer, we do not view the record in the same manner. The Superintendent did give reasons for his decision, namely, that a transfer would both be in the best interest of the school and present appellant with an opportunity for a new challenge and a chance to reinvigorate her skills. Appellant, therefore, was given reasons for her transfer. Although the reasons were not to her liking, this does not make the decision itself arbitrary.

 In addition, we hold that none of appellant's allegations allow for even the slightest inference of discriminatory action by the Superintendent under MD.CODE ANN., EDUC. § 6–105. In other words, as a matter of law, no reasonable person could conclude that appellant's factual allegations indicate that the Superintendent transferred appellant for discriminatory reasons.

Significantly, we observe that appellant never alleged facts indicating that she was somehow being improperly, discriminatorily, randomly, or unjustly singled out or targeted by the Superintendent. We do not now decide whether, from such an allegation, it might be possible to draw an inference supporting appellant's claim that the Superintendent acted arbitrarily, capriciously, and discriminatorily in transferring appellant. This allegation, however, could not have been made in good faith, given that appellant was one of several teachers involun-

tarily transferred that year, as we noted in the above factual presentation.

Finally, we address appellant's concern anticipating this Court's holding today, that it will allow county superintendents merely to recite the statutory language of MD.CODE ANN., EDUC. § 6–201(b)(2)(ii) ("as the needs of the schools require") as tneir sole basis for making a teacher-transfer decision. Appellant fears that after our holding, a superintendent can "effectively insulate himself from any review through ... merely stating in essence that he transferred someone because he had the power to do so." This holding does no such thing. In this case, the record is clear that the Superintendent provided much more than a regurgitation of his statutory authority under this provision. As a result, therefore, addressing appellant's fears must wait until the day they materialize.

As a result of the foregoing, we hold that the State Board committed no errors of law and was legally correct in applying its prior administrative case law to the factual allegations contained in this record.

**JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**